UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| KUM TAT LIMITED,<br><br>    Plaintiff,<br><br>    v.<br><br>LINDEN OX PASTURE, LLC,<br><br>    Defendant. | Case No. 14-cv-02857-WHO<br><br>**ORDER GRANTING DEFENDANT'S MOTION TO EXPUNGE LIS PENDENS**<br><br>Re: Dkt. No. 4 |

## INTRODUCTION

Plaintiff Kum Tat Limited ("Kum Tat") and defendant Linden Ox Pasture LLC ("Linden Ox") entered negotiations for the purchase of a $40 million residential property owned by Linden Ox. When Linden Ox terminated negotiations and contracted to sell the property to a third-party, Kum Tat filed an action in the Superior Court of California, San Mateo County for breach of contract and specific performance, and filed a notice of pending action (lis pendens) against the property. Linden Ox now moves to expunge the lis pendens on the ground that Kum Tat cannot carry its burden of demonstrating, by a preponderance of the evidence, the "probable validity" of a real property claim. *See* CAL. CIV. PROC. CODE § 405.32. For the reasons discussed below, the motion is GRANTED.

## BACKGROUND

The property at issue is a "residential estate" located in Atherton, California. Gullixson Decl. ¶ 2 (Dkt. No. 5). In early 2014, Linden Ox listed the property for sale through its real estate agent, Mary Gullixson.[1] Gullixson Decl. ¶ 2. On May 19, 2014, Kum Tat made an offer, in the

---

[1] Kum Tat objects to several statements Gullixson makes in her declaration concerning her personal impressions and understandings of the negotiations between Kum Tat and Linden Ox.

form of a Peninsula Regional Data Service ("PRDS") "Real Estate Purchase Contract," to purchase the property for $38 million. Gullixson Decl. ¶ 6. Kum Tat's offer provided that the purchase price would include all the property's furniture, artwork, and other furnishings, and that Linden Ox would be required to submit an "exclusion list" – i.e., a list of such items to be excluded from the sale – within five days of accepting the offer. Gullixson Decl. ¶ 6, Ex. C. At the time, the property's furniture, artwork, and other furnishings were valued in the millions of dollars. Gullixson Decl. ¶ 7.

On May 21, 2014, Linden Ox responded with a counteroffer, in the form of a PRDS "Counter Offer," to sell the property for $39.5 million ("Linden Ox's counteroffer"). Lam Decl. ¶ 3, Ex. B. The counteroffer also provided that, at the close of escrow, Kum Tat would pay an additional $3.5 million for the property's furnishings, excluding certain artwork and other items. *Id.* Although the counteroffer specifically identified several pieces of art and other furnishings for exclusion, it did not enumerate all items to be excluded from the sale. *Id.* To that end, the counteroffer required Linden Ox to submit an exclusion list within seven days of Kum Tat's acceptance of the counteroffer; Kum Tat would then approve the list within seven days of receiving it. Lam Decl. Ex. B.

On May 25, 2014, Kum Tat countered with an offer, also in the form of a PRDS "Counter Offer," to pay $41 million for the property and all its furnishings, excluding certain artwork and other personal items ("Kum Tat's counteroffer"). Lam Decl. ¶ 4, Ex. C. Like Linden Ox's counteroffer, Kum Tat's counteroffer specifically identified several pieces of art and other furnishings for exclusion but did not enumerate all items to be excluded. Lam Decl. ¶ 4, Ex. C. Kum Tat's counteroffer provided instead that Linden Ox would submit an exclusion list to Kum Tat, which Kum Tat would then "review and approve" in order to "fully ratify" the contract.[2] Lam

---

Opp. 14-15. Because I find the objected-to statements irrelevant to resolution of this motion, Kum Tat's objections are DENIED AS MOOT.

[2] The provision states in whole: "Seller to provide a specific exclusion and inclusion lists the same day signing Counter Offer No. Two (2) as the Record, and Buyer to review and approve in order to Fully Ratify this Purchase Contract." Lam Decl. Ex. C (grammar and mechanics as in original).

2

Decl. ¶ 4, Ex. C. Linden Ox signed Kum Tat's counteroffer in the space marked "Acceptance" and returned it to Kum Tat on May 27, 2014. Lam Decl. ¶ 4, Ex. C. Kum Tat contends an enforceable contract was formed at this point. Opp. 5-6.

On May 30, 2014, Linden Ox emailed its exclusion list to Kum Tat. Lam Decl. ¶ 6; Gullixson Decl. Ex F. Upon reviewing the list, Kum Tat realized that certain items it had believed would be included in the sale had been marked for exclusion by Linden Ox. Lam Decl. ¶ 6. The following day, Kum Tat's real estate agent, Fred Lam, informed Gullixson by telephone that Kum Tat intended to seek a reduction in the purchase price.[3] Gullixson Decl. ¶ 13.

On June 2, 2014, Lam sent an email to Gullixson stating that Kum Tat was "exercising the 'review and approve' clause" from Kum Tat's counteroffer, that Kum Tat had "disapproved the exclusion list," and that Kum Tat would request a $500,000 reduction of the purchase price, from $41,000,000 to $40,500,000.[4] Gullixson Decl. Ex. J. Shortly thereafter, Kum Tat submitted to Linden Ox a written addendum to Kum Tat's counteroffer (the "addendum"). Lam Decl. ¶ 7, Ex. D. The addendum provided that Kum Tat accepted Linden Ox's exclusion list, but "with a purchase price reduction of $500,000 – total purchase price to be $40,500,000." Lam Decl. ¶ 7, Ex. D. The addendum also provided: "Contract to be fully ratified by acceptance of this addendum."[5] *Id.* Linden Ox responded with an email rejecting the addendum and terminating

---

[3] The parties dispute the proper characterization of this telephone communication and the emails that followed. Lam's declaration states: "Prior to my submission of [the addendum], I had a telephone conversation and exchanged a number of emails with Gullixson in which she repeatedly attempted to persuade me to characterize [the addendum] as a counteroffer. I declined to do so." Lam Decl. ¶ 8. Gullixson's declaration states: "On May 31, 2014, I spoke with Mr. Lam on the telephone, and he indicated that Kum Tat would be making a counteroffer at a lower price." Gullixson Decl. ¶ 13.

[4] The relevant portion of the email states in whole: "The buyer is now exercising the 'review and approve' clause and disapproved the exclusion list by requesting a small reduction of Purchase Price. Consequently, the buyer is making correction to the Purchase Price in Counter Offer No. 2, therefore I believe an Addendum to reduce the Purchase Price from $41,000,000 in Counter Offer No. Two (2) to $40,500,000 is a better way than counting his own Counter Offer." Gullixson Decl. Ex. J (grammar and mechanics as in original).

[5] The addendum states in whole: "Buyers accepts seller's exclusion list delivered on 5/30/2014, with a purchase price reduction of $500,000.00 – total purchase price to be $40,500,000.00. Contract to be fully ratified by acceptance of this addendum." Lam Decl. Ex. E (grammar and mechanics as in original).

negotiations with Kum Tat. Lam Decl. ¶ 9, Ex. E.

On June 3, 2014, Linden Ox entered a contract to sell the property to a third-party buyer. Gullixson Decl. ¶ 19. On June 10, 2014, Kum Tat sued Linden Ox in San Mateo County Superior Court, alleging breach of contract and seeking specific performance. Dkt. No. 1, Ex. A. Kum Tat also filed a notice of pendency of action (lis pendens) against the property. Dkt. No. 1, Ex. D. Linden Ox removed the case to federal court on June 20, 2014 and filed this motion to expunge lis pendens on June 30, 2014. Dkt. Nos. 1, 4.

## LEGAL STANDARD

"A party who asserts a claim to real property can record a notice of lis pendens, which serves as notice to prospective purchasers, encumbrancers, and transferees that there is litigation pending that affects the property." *Amalgamated Bank v. Superior Court*, 149 Cal. App. 4th 1003, 1011 (2007). "A lis pendens acts as a cloud against the property, effectively preventing sale or encumbrance until the litigation is resolved or the lis pendens is expunged." *Id*. "A lis pendens is extinguished by recording either a notice of its withdrawal or an expungement order." *Fed. Deposit Ins. Corp. v. Charlton*, 17 Cal. App. 4th 1066, 1069 (1993). "If it is expunged and the expungement order is recorded, a subsequent purchaser takes title unencumbered by the judgment ultimately rendered in the action in which the lis pendens was recorded." *Id.* at 1069-70.

Federal courts apply state law in determining whether to expunge a lis pendens. 28 U.S.C. § 1964; CAL. CIV. PROC. CODE § 405.5. Under California law, the burden of proof is on the party opposing expungement. CAL. CIV. PROC. CODE § 405.30. A court must expunge a lis pendens if it finds either (1) that "the pleading on which the notice is based does not contain a real property claim," *id.* at § 405.31, or (2) that "the claimant has not established by a preponderance of the evidence the probable validity of the real property claim." *Id.* at § 405.32. A "real property claim" is one "which would, if meritorious, affect (a) title to, or the right to possession of, specific real property." *Id.* at § 405.4. Whether a pleading contains a real property claim is determined by a "demurrer-like analysis" that centers on the adequacy of the pleading. *Kirkeby v. Superior Court of Orange Cnty.*, 33 Cal.4th 642, 647-48 (2004). "Probable validity" means that "it is more likely than not that the claimant will obtain a judgment against the defendant on the claim." *Orange*

4

*Cnty. v. Hongkong & Shanghai Banking Corp.*, 52 F.3d 821, 824 (9th Cir. 1995). In determining probable validity, the court looks to the "factual merit[s]" of the underlying claim. *Kirkeby*, 33 Cal.4th at 651 (internal quotation marks and citations omitted).

**DISCUSSION**

Whether Kum Tat has a probably valid real property claim turns on whether Kum Tat is likely to prevail against Linden Ox for breach of contract.[6] Kum Tat asserts that a contract was formed between the parties on May 27, 2014, when Linden Ox accepted Kum Tat's counteroffer (the "May 27 agreement"), and that Linden Ox breached the contract when it terminated negotiations following receipt of Kum Tat's addendum. Opp. 5-7.

Linden Ox contends that by the time it ceased negotiations with Kum Tat, the May 27 agreement was no longer an enforceable contract. Mot. 15-18. Linden Ox points to the clause requiring it to submit an exclusion list to Kum Tat, which Kum Tat would then "review and approve" in order to "fully ratify" the contract (the "review and approve" clause). According to Linden Ox, the review and approve clause is a condition precedent that made the enforceability of the May 27 agreement dependent on Kum Tat's approval of the exclusion list. *Id.* By rejecting the exclusion list instead of approving it, Kum Tat terminated the contract between the parties. *Id.*

Kum Tat responds that the review and approve clause is not a condition precedent, but an agreement to agree. Opp. 8-10. Under California law, agreements to agree are generally enforceable, so long as the matter left for future agreement is not an "essential element" of the contract. *See City of Los Angeles v. Superior Court of Los Angeles Cnty.*, 51 Cal.2d 423, 433 (1959). Kum Tat asserts that the review and approve clause concerns a nonessential element of the contract – i.e., the disposition of those furnishings and other items that were not already specifically excluded in the May 27 agreement – and that, therefore, the contract remains valid. Opp. 8-10.

The parties' arguments raise the question of whether the review and approve clause is

---

[6] Linden Ox does not argue that Kum Tat's complaint fails to state a real property claim. *See* CAL. CIV. PROC. CODE § 405.31. Linden Ox argues only that Kum Tat has not satisfied the "probable validity" requirement. *See* CAL. CIV. PROC. CODE § 405.32.

properly characterized under California law as a condition precedent or an agreement to agree. Neither party squarely addresses the issue in its briefing. The question is ultimately irrelevant. Under either analysis, the outcome is the same: Kum Tat is not likely to prevail against Linden Ox for breach of contract.

## I.  CONDITION PRECEDENT ANALYSIS

If the review and approve clause is characterized as a condition precedent, Kum Tat's breach of contract claim is likely to fail because Kum Tat terminated the May 27 agreement by rejecting Linden Ox's exclusion list.

"A condition precedent is an act that must be performed or an uncertain event that must happen before the promisor's duty of performance arises." WITKIN, SUMMARY OF CAL. LAW, CONTRACTS § 776 (10th ed. 2005). California law provides that before any party to a contract can require another party to perform under it, he must satisfy all conditions precedent which the contract imposes upon him. CAL. CIV. CODE § 1439.

In *Beverly Way Associates v. Barham*, 226 Cal. App. 3d 49 (1990), the plaintiff buyer contracted to purchase a residential building from the defendant seller. *Id.* at 52. The contract contained a provision entitled, "Approval by Buyer of Inspection and Documents," which gave the buyer 28 days after the receipt of certain documents, including a certified survey of the building, to review and approve the documents. *Id.* The provision, which the court characterized as a condition precedent, made the buyer's obligation to close escrow dependent on its review and approval of the documents. *Id.*

Within 28 days of receiving the documents, the buyer wrote the seller rejecting the building survey. *Id.* at 53. In the letter, the buyer detailed its reasons for rejecting the building survey but also expressed hope that the inadequacies could be surmounted with "some effort, additional time and expense." *Id.* The buyer proposed "some alternatives" to preserve the deal. *Id.* After approximately two months had passed, the buyer wrote the seller again, offering to waive its objections concerning the building survey and to proceed to close escrow. *Id.* When the seller refused, the buyer sued for specific performance and filed a lis pendens against the building. *Id.* at 54. The trial court sustained the seller's demurrer and expunged the lis pendens, holding

6

that "[b]y disapproving the survey…, [the] buyer terminated the contract and cannot sue on same." *Id*. at 54.

The court of appeal affirmed. *Id.* at 55-57. In doing so, the court reasoned that where a contract is conditioned on a party's review and approval of a certain matter, that party is effectively "in the same position as a contract offeree. It is hornbook law that an unequivocal rejection by an offeree, communicated to the offeror, terminates the contract; … the offeree cannot later purport to accept the offer and thereby create enforceable contractual rights against the offeror." *Id.* at 55. The court also noted that there was "no question...that the buyer exercised its power of disapproval in this case." *Id.* at 56. Not only did the buyer explicitly disapprove of the building survey in its letter, the buyer also proposed "new formulations" of the original agreement, thereby indicating that "it was unwilling to [acquire the building] on the basis of" the previously agreed-upon terms. *Id.* at 56.

In light of *Beverly*, Kum Tat cannot show the probable validity of its breach of contract claim. Here, as in *Beverly*, there was a real estate purchase contract conditioned on the buyer's review and approval of a certain matter, and the buyer exercised its power of disapproval. In *Beverly*, this resulted in the termination of the contract. Kum Tat has not satisfied its burden of showing that it is more likely than not that there would be a different outcome here.

Apart from arguing that the review and approve clause should be characterized not as a condition precedent, but as an agreement to agree, Kum Tat offers only one ground for distinguishing *Beverly*: that Kum Tat did not disapprove of Linden Ox's exclusion list. Opp. 10 n.2. But the record indicates that Kum Tat expressed both explicit disapproval and a desire to modify the agreement – the same two circumstances highlighted by the *Beverly* court in concluding there was "no question" the buyer in that case had exercised its power of disapproval. *See* 226 Cal. App. 3d at 56. On May 31, 2014, Kum Tat's real estate agent, Fred Lam, called Linden Ox's real estate agent, Mary Gullixson. Although the parties dispute the exact words exchanged during the conversation, it is undisputed that, at the very least, Lam informed Gullixson that Kum Tat intended to seek a reduction in the purchase price. Lam Decl. ¶ 8; Gullixson Decl. ¶ 13. On June 2, 2014, Lam sent an email to Gullixson stating that Kum Tat was "exercising the

7

1 'review and approve' clause," that Kum Tat had "disapproved the exclusion list," and that Kum
2 Tat would request a $500,000 reduction of the purchase price, from $41,000,000 to $40,500,000.
3 Gullixson Decl. Ex. J.  Kum Tat then submitted to Linden Ox an addendum requesting a purchase
4 price reduction of $500,000.  Lam Decl. Ex. D.  Under *Beverly*, these facts are more than
5 sufficient to show that Kum Tat exercised its power of disapproval, thereby terminating the
6 contract between the parties.
7       Kum Tat argues it did not disapprove of the exclusion list because its addendum begins
8 with the sentence: "Buye[r] accepts seller's exclusion list."  Opp. 10 n.2.  This argument fails
9 because it ignores both what came before the sentence – i.e., Lam's telephone call to Gullixson
10 and his email to her stating that Kum Tat had "disapproved the exclusion list" – and what came
11 after it – i.e., the addendum's request for a purchase price reduction of $500,000, and the
12 statement, "Contract to be fully ratified by acceptance of this addendum."  Gullixson Decl. Ex. J;
13 Lam Decl. Ex. D.  Viewed in context, the first sentence of Kum Tat's addendum is not enough to
14 transform Kum Tat's rejection of the exclusion list into an acceptance.
15       Basic principles of contract law add further support to this conclusion.  As the court of
16 appeal held in *Beverly*, where a contract is conditioned on a party's review and approval of a
17 certain matter, that party is effectively "in the same position as a contract offeree."  226 Cal. App.
18 3d at 55.  An offeree's "unequivocal rejection, communicated to the offeror, terminates the offer."
19 *Id.*  "However, a manifestation of an intent not to accept, short of an unequivocal rejection, can
20 also terminate the offer.  If the offeree's words or acts either indicate that the offeree is declining
21 the offer or justify the offeror in so inferring, the offeree will be considered to have rejected the
22 offer."  *Guzman v. Visalia Cmty. Bank*, 71 Cal. App. 4th 1370, 1376 (1999).  Likewise, where the
23 offeree's purported acceptance adds "additional or different terms from those offered…the
24 'acceptance' becomes a counteroffer."  *Id.*; *see also*, RESTATEMENT (SECOND) OF CONTRACTS § 59
25 (1981) ("A reply to an offer which purports to accept it but is conditional on the offeror's assent to
26 terms additional to or different from those offered is not an acceptance but is a counteroffer.").
27 Under these principles, a court could characterize Kum Tat's communications in response to
28 Linden Ox's exclusion list as either a rejection or a counteroffer, but it is not plausible – let alone

8

probable – that a court would characterize them as an acceptance.[7]

## II.     AGREEMENT TO AGREE ANALYSIS

Even if the review and approve clause is characterized as an agreement to agree, Kum Tat is still unlikely to prevail on its breach of contract claim. Under California law, "[t]he general rule is that if an 'essential element' of a promise is reserved for the future agreement of both parties, the promise gives rise to no legal obligation until such future agreement is made." *City of Los Angeles*, 51 Cal.2d at 433; *see also, Copeland v. Baskin Robbins U.S.A.*, 96 Cal. App. 4th 1251, 1256 (2002). In such circumstances, "[t]he 'contract' is nothing more than an 'agreement to agree,' as either party may not agree, and the court cannot enforce the obligation." MILLER AND STARR CAL. REAL EST. § 1:20 (3d ed.); *see also,* WITKIN, SUMMARY CAL. LAW, CONTRACTS § 147 (10th ed. 2005) ("Since either party by the terms of the promise may refuse to agree to anything to which the other party will agree, it is impossible for the law to affix any obligation to such a promise.") (internal quotation marks and citations omitted).

The exception to this general rule is where the agreement is "definite in its essential elements" and the agreement to agree concerns only "some minor, nonessential detail." WITKIN, SUMMARY OF CAL. LAW, CONTRACTS § 146 (10th ed. 2005). Thus, "[t]he enforceability of a

---

[7] Kum Tat also argues that if the review and approve clause is a condition precedent, then any termination of the contract pursuant to the clause is governed by paragraph 21A of the May 27 agreement. Opp. 13. Paragraph 21A provides in part: "Enforcement of Time Frames and Contractual Obligations in this Contract requires that a written Notice to Perform signed by the Party seeking enforcement first be delivered to the other Party, who shall have two days to either remove the designated contingency, perform the designated Contractual Obligations, or cancel this contract." Lam Decl. Ex. A. Kum Tat argues that paragraph 21A required Linden Ox to provide Kum Tat with a Notice to Perform before terminating the agreement. Opp. 13. The problem with this argument is that paragraph 8 of the May 27 agreement lists the agreement's "contingencies," and the only contingency listed is a "property condition" contingency involving the buyer's right to inspect the property. Lam Decl. Ex. A. Further, Kum Tat's power of disapproval over Linden Ox's exclusion list was not a "contractual obligation," as Kum Tat was not obligated under the contract to either approve or disapprove of the exclusion list, so long as Kum Tat exercised its discretion in good faith. *See Beverly*, 226 Cal. App. 3d at 55 ("The effect of a buyer's power to approve documentation required in a contract for the purchase of real estate is to give the buyer an option not to consummate the purchase…, at least so long as the buyer acts reasonably and in the exercise of good faith.") (internal quotation marks and citation omitted).

1    contract containing a promise to agree depends upon the relative importance and the severability
2    of the matter left to the future." *City of Los Angeles*, 51 Cal.2d at 433.  The key inquiry is
3    "whether the indefinite promise is so essential to the bargain that inability to enforce that promise
4    strictly according to its terms would make unfair the enforcement of the remainder of the
5    agreement." *Id.*  "Where the matters left for future agreement are unessential, each party will be
6    forced to accept a reasonable determination of the unsettled point or if possible the unsettled point
7    may be left unperformed and the remainder of the contract be enforced." *Id.*

8         Kum Tat asserts that the review and approve clause concerns a nonessential element of the
9    May 27 agreement and that, therefore, the contract between the parties remains valid.  I disagree.
10   The subject matter of the review and approve clause – i.e., the items that would either be excluded
11   from or included in the sale of the property – was central to the negotiations between Kum Tat and
12   Linden Ox.  Indeed, much of the back and forth between the parties was dedicated to the
13   disposition of the property's immensely valuable collection of furniture, artwork, and other
14   furnishings.  Kum Tat's initial offer included all furniture, artwork, and other furnishings.
15   Gullixson Decl. ¶ 6, Ex. C.  Linden Ox's counteroffer included all the property's furniture but
16   excluded a number of pieces of artwork and other items, and required Linden Ox to submit an
17   exclusion list for Kum Tat's review and approval.  Lam Decl. ¶ 3, Ex. B.  Kum Tat's counteroffer
18   likewise required the review and approval of Linden Ox's exclusion list in order to "fully ratify"
19   the contract.  Lam Decl. ¶ 4, Ex. C.  Kum Tat does not explain why, if the items included in the
20   sale constituted a nonessential element of the agreement, the parties spent so much time and
21   energy negotiating precisely which items would and would not be included in the sale.  Nor does
22   Kum Tat explain why it felt compelled to request a $500,000 price reduction on account of a
23   matter which Kum Tat now describes as nonessential.

24        None of the cases cited by Kum Tat provides more than nominal support for the
25   proposition that the review and approve clause concerns only a nonessential matter.  In *City of Los*
26   *Angeles v. Superior Court*, the city contracted to transfer land to the Brooklyn National League
27   Baseball Club in exchange for various promises from the club, including promises to construct a
28   baseball stadium on the land and to move the Dodgers baseball team from Brooklyn to Los

Angeles. 51 Cal.2d at 430-31.  The contract left several items for the future agreement of the parties, including details concerning the to-be-constructed recreational facilities and the exact location of the city's reserved oil drilling site.  *Id.* at 433.  The California Supreme Court held these uncertainties did not render the contract void, as there was "no indication that the city and the…club are unable to come to an agreement as to them, and, if the parties cannot do so, the court may determine [reasonable terms], in accordance with the general purposes of the contract."  *Id.* at 433.

The uncommon magnitude of the contract at issue in *City of Los Angeles* means the case provides minimal guidance in determining whether the review and approve clause concerned an essential or nonessential element of the May 27 agreement.  Moreover, in that case, there was "no indication" that the parties would be unable to resolve the matters left to future agreement.  51 Cal.2d at 433.  Here, in sharp contrast, the matter which Kum Tat now claims is nonessential to the May 27 agreement is the very matter that triggered the dissolution of the agreement in the first place.

In *California Lettuce Growers, Inc. v. Union Sugar Co.*, 45 Cal. 2d 474 (1955), the California Supreme Court held that a contract for the sale of sugar beets was enforceable despite the parties' failure to include a specific purchase price in their agreement.  *Id.* at 481-85.  The court reasoned the failure was not fatal to the contract because "a contract need not specify price if it can be objectively determined."  *Id*. at 482.  Looking to "the industry's usage and custom" and the parties' prior course of dealing, which stretched back approximately five years, the court determined an appropriate figure.  *Id.* at 483-85.

*California Lettuce Growers* is plainly distinguishable because, in the instant case, the matter left to future agreement was not a mere price term, but the property to be exchanged.  Further, there is no evidence that Kum Tat and Linden Ox have an extensive prior course of dealing, and Kum Tat has not identified any criteria according to which a reasonable and appropriate exclusion list could be "objectively determined" by a court.  *See id.* at 482.

Finally, in *Coleman Eng'g Co. v. N. Am. Aviation, Inc.*, 65 Cal.2d 396 (1966), the California Supreme Court considered a contract between a defense contractor and an engineering

11

firm for the design and manufacture of the "Hound Dog Missile" for the United States Armed Forces. *Id.* at 398. The contract included a provision which allowed the defense contractor to make "changes" in certain terms of the contract, in which event "an equitable adjustment in price and time of performance mutually satisfactory to buyer and seller" would be made. *Id.* at 399-400. The court acknowledged the general rule that a contract reserving an essential element for future agreement is unenforceable but concluded that the rule does not apply to "provisions governing change orders in a building contract where the price for changes is subject to mutual satisfaction." *Id.* at 405. Unlike *Coleman Engineering*, this case does not involve "provisions governing change orders in a building contract." *Id.* Kum Tat's reliance on *Coleman Engineering* is completely misplaced.

Contrary to Kum Tat's assertions, characterizing the review and approve clause as an agreement to agree does not substantially impact Kum Tat's likelihood of prevailing against Linden Ox for breach of contract. Whether the review and approve clause is characterized as a condition precedent or an agreement to agree, Kum Tat cannot show, by a preponderance of the evidence, the probable validity of a real property claim. Accordingly, the lis pendens must be expunged.

## III.   ATTORNEY'S FEES

Linden Ox seeks an award of reasonable attorney's fees and costs expended in bringing this motion. Mot. 20. California Civil Procedure Code section 405.38 requires the court to award the prevailing party on a motion to expunge lis pendens its "reasonable attorney's fees and costs of making or opposing the motion unless the court finds that the other party acted with substantial justification or that other circumstances make the imposition of attorney's fees and costs unjust." CAL. CIV. PROC. CODE § 405.38. Because I conclude Kum Tat was substantially justified in filing a lis pendens against the property, Linden Ox's request for attorney's fees under section 405.38 is DENIED.

At the hearing on this motion, Linden Ox raised for the first time California Civil Code section 1717 as an alternative ground for an attorney's fees award. That section provides in part:

> In any action on a contract, where the contract specifically provides that attorney's

12

fees and costs, which are incurred to enforce that contract, shall be awarded either to one of the parties or to the prevailing party, then the party who is determined to be the party prevailing on the contract, whether he or she is the party specified in the contract or not, shall be entitled to reasonable attorney's fees in addition to other costs.

CAL. CIV. CODE § 1717(a).

I will not address Linden Ox's section 1717 argument because it was not made in a timely way so that Kum Tat would have an opportunity to brief it. Additionally, it is by no means clear that attorney's fees under section 1717, which may only be awarded upon "final resolution" of a contract claim, are available on a motion to expunge lis pendens. *See Hsu v. Abbara*, 9 Cal.4th 863, 876 (1995).

## CONCLUSION

Because Kum Tat has failed to carry its burden of showing the probable validity of a real property claim by a preponderance of the evidence, the motion to expunge is GRANTED. The lis pendens on the property located at 85 Isabella Avenue, Atherton, California is expunged. No attorney's fees or costs shall be awarded at this time.

**IT IS SO ORDERED**.

Dated: September 18, 2014

WILLIAM H. ORRICK
United States District Judge