UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

KUM TAT LIMITED,

    Plaintiff,

    v.

LINDEN OX PASTURE, LLC,

    Defendant.

Case No. 14-cv-02857-WHO

**ORDER DENYING MOTION TO COMPEL ARBITRATION**

Re: Dkt. No. 50

## INTRODUCTION

Plaintiff Kum Tat Limited ("Kum Tat") and defendant Linden Ox Pasture, LLC ("Linden Ox") entered negotiations for the purchase of residential property owned by Linden Ox. When Linden Ox terminated negotiations and contracted to sell the property to a third-party, Kum Tat sued for breach of contract and specific performance. Kum Tat moves to compel Linden Ox to arbitrate the dispute. Because Kum Tat has not shown the existence of a binding contract between the parties, the motion is DENIED.

## BACKGROUND

### I. FACTUAL BACKGROUND

Except where otherwise indicated, the following facts are drawn from the Court's September 18, 2014 order granting Linden Ox's motion to expunge lis pendens. *See* Dkt. No. 43 at 1-4. I include them here for ease of reference.

The property at issue is a residential estate located in Atherton, California. In early 2014, Linden Ox listed the property for sale through its real estate agent, Mary Gullixson. On May 12, 2014, Kum Tat executed a Real Estate Purchase Contract ("REPC") offering to purchase the property for $38 million. Lam Decl. ¶ 2, Ex. A (Dkt. No. 27). The offer provided that the purchase price would include all the property's furniture, artwork, and other furnishings, and that Linden Ox would be required to submit an "exclusion list" – i.e., a list of such items to be

1  excluded from the sale – within five days of accepting the offer. At the time, the property's
2  furniture, artwork, and other furnishings were valued in the millions of dollars.
3      The REPC includes an arbitration provision, which Kum Tat initialed. It provides in
4  relevant part:

> ARBITRATION OF DISPUTES: By initialing Paragraph 29B . . . , Buyer and Seller agree to submit any disputes between them concerning and/or arising out of this Contract to binding arbitration if those disputes are not resolved by mediation . . . Arbitration shall be conducted pursuant to Title 9 of the California Code of Civil Procedure including, but not limited to, the right of discovery under Section 1283.05.

9  Lam Decl., Ex. A § 29.B. The REPC also contains a choice-of-law provision that states, "This
10 Contract and all other documents referenced in this Contract shall be governed by, and shall be
11 construed according to, the laws of the State of California." *Id.* § 27.I.
12      Kum Tat sent the offer to Linden Ox on May 19, 2014. Gullixson Decl. ¶ 6 (Dkt. No. 5).
13 On May 21, 2014, Linden Ox responded with a counteroffer to sell the property for $39.5 million.
14 The counteroffer provided that, at the close of escrow, Kum Tat would pay an additional $3.5
15 million for the property's furnishings, excluding certain artwork and other items. Although the
16 counteroffer specifically identified several pieces of art and other furnishings for exclusion, it did
17 not enumerate all such items to be excluded from the sale. To that end, the counteroffer required
18 Linden Ox to submit an exclusion list within seven days of Kum Tat's acceptance of the
19 counteroffer; Kum Tat would then approve the list within seven days of receiving it. Linden Ox
20 initialed the REPC's arbitration provision as part of the counteroffer. Lam Decl. ¶ 3, Ex. B.
21      Kum Tat did not accept the counteroffer. Instead, on May 25, 2014, Kum Tat countered at
22 $41 million for the property and all its furnishings, excluding certain artwork and other personal
23 items. Like Linden Ox's counteroffer, Kum Tat's counteroffer specifically identified several
24 pieces of art and other furnishings for exclusion but did not enumerate all such items to be
25 excluded. It provided instead that Linden Ox would submit an exclusion list to Kum Tat, which
26 Kum Tat would then "review and approve" in order to "fully ratify" the contract. The provision
27 (i.e., the "review and approve clause") states in whole:
28      Seller to provide a specific exclusion and inclusion lists the same day signing

United States District Court
Northern District of California

Counter Offer No. Two (2) as the Record, and Buyer to review and approve in order to Fully Ratify this Purchase Contract.

Lam Decl., Ex. C (grammar and mechanics as in original).

Kum Tat's counteroffer was set to expire on May 30, 2014. *Id.* Linden Ox signed Kum Tat's counteroffer in the space marked "Acceptance," returned it to Kum Tat on May 27, 2014, and emailed its exclusion list to Kum Tat on May 30, 2014.[1]

Kum Tat did not accept the exclusion list. Certain items it had believed would be included in the sale had been marked for exclusion. On May 31, 2014, Kum Tat's real estate agent, Fred Lam, informed Gullixson by telephone that Kum Tat intended to seek a reduction in the purchase price.[2] On June 2, 2014, Lam sent an email to Gullixson stating that Kum Tat was "exercising the review and approve clause," that Kum Tat had "disapproved the exclusion list," and that Kum Tat would request a $500,000 reduction of the purchase price, from $41,000,000 to $40,500,000.[3] Shortly thereafter, Kum Tat submitted to Linden Ox a written addendum to Kum Tat's counteroffer. The addendum provided that Kum Tat accepted Linden Ox's exclusion list "with a purchase price reduction of $500,000 – total purchase price to be $40,500,000." The addendum also provided: "Contract to be fully ratified by acceptance of this addendum."[4]

---

[1] Kum Tat contends that an enforceable contract was formed on May 27, 2014. Mot. 2 (Dkt. No. 50).

[2] The parties dispute the proper characterization of this telephone communication and the emails that followed. Lam's declaration states: "Prior to my submission of [the addendum], I had a telephone conversation and exchanged a number of emails with Gullixson in which she repeatedly attempted to persuade me to characterize [the addendum] as a counteroffer. I declined to do so." Lam Decl. ¶ 8. Gullixson's declaration states: "On May 31, 2014, I spoke with Mr. Lam on the telephone, and he indicated that Kum Tat would be making a counteroffer at a lower price." Gullixson Decl. ¶ 13.

[3] The relevant portion of the email states in whole: "The buyer is now exercising the 'review and approve' clause and disapproved the exclusion list by requesting a small reduction of Purchase Price. Consequently, the buyer is making correction to the Purchase Price in Counter Offer No. 2, therefore I believe an Addendum to reduce the Purchase Price from $41,000,000 in Counter Offer No. Two (2) to $40,500,000 is a better way than counting his own Counter Offer." Gullixson Decl., Ex. J (grammar and mechanics as in original).

[4] The addendum states in whole: "Buyers accepts seller's exclusion list delivered on 5/30/2014, with a purchase price reduction of $500,000.00 – total purchase price to be $40,500,000.00. Contract to be fully ratified by acceptance of this addendum." Lam Decl., Ex. E (grammar and mechanics as in original).

1   Linden Ox rejected the addendum and terminated negotiations with Kum Tat by email that
2   day. On June 3, 2014, Linden Ox entered an agreement to sell the property to a third party.

## II. PROCEDURAL BACKGROUND

Kum Tat filed this action on June 10, 2014 in the Superior Court of California, County of San Mateo, alleging breach of contract and seeking specific performance. Dkt. No. 1, Ex. A. Kum Tat also filed a notice of pendency of action (lis pendens) against the property. Dkt. No. 1, Ex. D. Linden Ox removed the case to federal court on June 20, 2014 and filed a motion to expunge lis pendens shortly thereafter. Dkt. Nos. 1, 4. On September 18, 2014, I issued an order granting the motion to expunge lis pendens on the ground that Kum Tat had not carried its burden of showing, by a preponderance of the evidence, that it was likely to prevail against Linden Ox on its breach of contract claim. Dkt. No. 43. Kum Tat filed the instant motion on October 27, 2014. Dkt. No. 50. I heard argument from the parties on December 3, 2014.

## LEGAL STANDARD

Under both federal and state law, the threshold question presented by a motion to compel arbitration is whether the parties agreed to arbitrate. The United States Supreme Court has stated that "arbitration is a matter of contract and a party cannot be required to submit to arbitration any dispute which he has not agreed so to submit." *AT & T Technologies, Inc. v. Commc'ns Workers of Am.*, 475 U.S. 643, 648 (1986); *see also, Mitsubishi Motors Corp. v. Soler Chrysler-Plymouth, Inc.*, 473 U.S. 614, 626 (1985) ("[T]he first task of a court asked to compel arbitration of a dispute is to determine whether the parties agreed to arbitrate that dispute."). Likewise, under California law, "[t]he right to arbitration depends on the existence of an agreement to arbitrate, and hence a party cannot be forced to arbitrate in the absence of an agreement to do so." *Frederick v. First Union Sec., Inc.*, 100 Cal. App. 4th 694, 697 (2002); *see also,* Cal. Civ. P. Code § 1281.2.

Accordingly, where a party contests the existence of an arbitration agreement, the court, and not the arbitrator, must decide whether such an agreement exists. *Sanford v. MemberWorks, Inc.*, 483 F.3d 956, 962 (9th Cir. 2007); *Sparks v. Vista Del Mar Child & Family Servs.*, 207 Cal. App. 4th 1511, 1517-19 (2012). This rule applies not only to "challenges to the arbitration clause itself, but also [to] challenges to the making of the contract containing the arbitration clause."

*Sanford*, 483 F.3d at 962; *see also, Granite Rock Co. v. Int'l Bhd. of Teamsters*, 561 U.S. 287, 296 (2010) ("It is . . . well settled that where the dispute at issue concerns contract formation, the dispute is generally for courts to decide."); *Buckeye Check Cashing, Inc. v. Cardegna*, 546 U.S. 440, 444 n.1 (2006) (distinguishing the generally arbitral issue of a contract's validity from the generally nonarbitral issue of "whether any agreement between the alleged obligor and obligee was ever concluded").

The question of whether the parties entered a contract containing an arbitration agreement is ordinarily decided under state law. *First Options of Chicago, Inc. v. Kaplan*, 514 U.S. 938, 944 (1995); *see also, Cheng-Canindin v. Renaissance Hotel Associates*, 50 Cal. App. 4th 676, 683 (1996) ("The question of whether the parties agreed to arbitrate is answered by applying state contract law even when it is alleged that the agreement is covered by the [Federal Arbitration Act]."). In California, the party seeking to compel arbitration has the burden of proving the existence of the agreement to arbitrate by a preponderance of the evidence. *Engalla v. Permanente Med. Grp., Inc.*, 15 Cal.4th 951, 972 (1997).

## DISCUSSION

### I. WHETHER THE PARTIES ENTERED A BINDING AGREEMENT TO ARBITRATE IS A QUESTION FOR THE COURT, NOT THE ARBITRATOR.

Kum Tat argues that under *Prima Paint Corp. v. Flood & Conklin Mfg. Co.*, 388 U.S. 395 (1967), and *Buckeye Check Cashing, Inc. v. Cardegna*, the arbitration provision in the REPC must be enforced. Linden Ox contends that arbitration may only be compelled if the Court first determines that the parties entered a binding agreement to arbitrate, which Linden Ox argues it did not. Linden Ox is right.

In *Prima Paint*, the Supreme Court held that "claims of fraud in the inducement generally" – that is, claims of fraud not going specifically to the arbitration clause – are decided by the arbitrator rather than the court. 388 U.S. at 403-404. In *Buckeye*, the Court reviewed a state supreme court decision refusing to enforce an arbitration clause in a contract challenged as unlawful under state law. 546 U.S. at 442-43. Applying *Prima Paint*, the Court concluded that because the challenge was to the lawfulness of the contract as a whole, and not to the lawfulness

5

of its arbitration provisions specifically, the provisions were enforceable even if the contract was not. *Id.* at 446.  The Court stated: "[A]n arbitration provision is severable from the remainder of the contract . . . [U]nless the challenge is to the arbitration clause itself, the issue of the contract's validity is considered by the arbitrator in the first instance." *Id.* at 445-46.  This "severability doctrine" applies with equal force when a party seeks to compel arbitration under California law. *Ericksen, Arbuthnot, McCarthy, Kearney & Walsh, Inc. v. 100 Oak St.*, 35 Cal.3d 312, 323, (1983); *see also, Bruni v. Didion*, 160 Cal. App. 4th 1272, 1285 (2008).

Kum Tat is thus correct that in certain circumstances, a challenge to the overall agreement as opposed to the arbitration agreement specifically must go to the arbitrator.  As noted above, however, arbitration is a matter of contract, and under state and federal law alike, "a party cannot be compelled to arbitrate a dispute that he has not agreed to resolve by arbitration." *Lee v. S. Cal. Univ. for Prof'l Studies,* 148 Cal. App. 4th 782, 786 (2007) (internal quotation marks omitted); *see also, AT & T Technologies,* 475 U.S. at 648.  Accordingly, notwithstanding the severability doctrine, "[a] court . . . still must consider one type of challenge to the overall contract:  a claim that the party resisting arbitration never actually agreed to be bound." *Bruni*, 160 Cal. App. 4th at 1284.

It is for this reason that Kum Tat's reliance on *Prima Paint* and *Buckeye* is misplaced. Those cases stand for the proposition that where a party opposing arbitration challenges the validity of the contract as a whole, and not the validity of the contract's arbitration provision itself, the challenge must be decided by the arbitrator.  Challenges to a contract's very existence, however, as opposed to its continued validity, are decided by the court.

The Ninth Circuit has repeatedly recognized this limitation on the severability doctrine.  In *Three Valleys Mun. Water Dist. v. E.F. Hutton & Co.*, 925 F.2d 1136 (9th Cir. 1991), the district court sent to the arbitrator the question of whether the signatory to the underlying agreement had the authority to contractually bind the plaintiffs. *Id.* at 1138.  The Ninth Circuit reversed, holding that *Prima Paint* is "limited to challenges seeking to avoid or rescind a contract – not to challenges going to the very existence of a contract that a party claims never to have agreed to." *Id.* at 1140 (emphasis omitted).  The Ninth Circuit explained that "because an arbitrator's jurisdiction is

6

rooted in the agreement of the parties, a party who contests the making of a contract containing an arbitration provision cannot be compelled to arbitrate the threshold issue of the existence of an agreement to arbitrate. Only a court can make that decision." *Id.* at 1140-41 (emphasis and footnote omitted). Likewise, in *Sanford v. MemberWorks, Inc.*, the Ninth Circuit rejected the district court's reading of *Prima Paint* "as mandating that the court decide all challenges to an arbitration clause but the arbitrator decide all challenges to the contract as a whole." *Id.* at 963. The Ninth Circuit clarified that "[i]ssues regarding the *validity* or *enforcement* of a putative contract mandating arbitration should be referred to an arbitrator, but challenges to the *existence* of a contract as a whole must be determined by the court prior to ordering arbitration." *Id.* at 962 (emphasis in original). The Ninth Circuit vacated the order compelling arbitration and remanded the case to the district court "to determine whether a contract was formed" between the parties. *Id.* at 964; *see also, Olsen v. U.S. ex rel. Fed. Crop Ins. Corp.*, 334 F. App'x 834 (9th Cir. 2009).

The distinction between questions regarding a contract's validity, on the one hand, and questions regarding its existence, on the other, is also reflected in *Buckeye*. There, the Supreme Court acknowledged that

> [t]he issue of the contract's validity is different from the issue whether any agreement between the alleged obligor and obligee was ever concluded. Our opinion today addresses only the former, and does not speak to the issue decided in the cases cited by respondents . . . , which hold that it is for courts to decide whether the alleged obligor ever signed the contract, whether the signor lacked authority to commit the alleged principal, and whether the signor lacked the mental capacity to assent.

546 U.S. at 444 n.1 (citations omitted). The Supreme Court again emphasized the distinction in *Granite Rock Co. v. Int'l Bhd. of Teamsters*, 561 U.S. 287 (2010), stating that "where the dispute at issue concerns contract formation, the dispute is generally for courts to decide," not arbitrators. *Id.* at 296. Thus, before compelling arbitration, a court must first "resolve any issue that calls into question the formation or applicability of the specific arbitration clause that a party seeks to have the court enforce." *Id.* at 297. In other words, "courts should order arbitration of a dispute only where the court is satisfied that neither the formation of the parties' arbitration agreement nor . . . its enforceability or applicability to the dispute is in issue. Where a party contests either or both

7

1    matters, the court must resolve the disagreement." *Id.* at 299-300 (internal quotation marks,
2    citations, and emphasis omitted).

3          In line with the Supreme Court's analysis in *Buckeye* and *Granite Rock* and the Ninth
4    Circuit's decisions in *Three Valleys* and *MemberWorks*, numerous courts have recognized that
5    "[w]here the very existence of any agreement is disputed, it is for the courts to decide at the outset
6    whether an agreement was reached." *Will-Drill Res., Inc. v. Samson Res. Co.*, 352 F.3d 211, 218
7    (5th Cir. 2003); *see also, Solymar Investments, Ltd. v. Banco Santander S.A.*, 672 F.3d 981, 989
8    (11th Cir. 2012) ("[I]ssues concerning contract formation are generally reserved for the courts to
9    decide."); *Janiga v. Questar Capital Corp.*, 615 F.3d 735, 738 (7th Cir. 2010) ("[T]he existence of
10   a contract is an issue that the courts must decide prior to staying an action and ordering
11   arbitration."); *Par-Knit Mills, Inc. v. Stockbridge Fabrics Co.*, 636 F.2d 51, 55 (3d Cir. 1980) ("A
12   party may, in an effort to avoid arbitration, contend that it did not intend to enter into the
13   agreement which contained an arbitration clause."); *Sparks*, 207 Cal. App. 4th at 1517 ("Under
14   both federal and state law, the threshold question presented by a petition to compel arbitration is
15   whether there is an agreement to arbitrate."); *Frederick*, 100 Cal. App. 4th at 697 ("The right to
16   arbitration depends on the existence of an agreement to arbitrate, and hence a party cannot be
17   forced to arbitrate in the absence of an agreement to do so.").

18         Linden Ox's dispute with Kum Tat is plainly a challenge to the existence of a binding
19   contract, not to a contract's continued validity. The first sentence of Linden Ox's opposition
20   states: "Arbitration is not required because there was no contract between Kum Tat and Linden
21   Ox." Opp. 1 (Dkt. No. 51). Linden Ox proceeds to argue that "[t]here was never a 'fully ratified'
22   contract" between the parties, and that to the extent the review and approve clause constituted a
23   condition precedent, it was a condition precedent to formation of the contract, the failure of which
24   prevented any contract from forming. Opp. 1-2, 9-10. These are questions regarding contract
25   formation, not contract enforcement. Accordingly, I must resolve them before compelling
26   arbitration. *Granite Rock*, 561 U.S. at 299-300; *Sanford*, 483 F.3d at 962; *see also, Thompson v.*
27   *Lithia Chrysler Jeep Dodge of Great Falls, Inc.*, 343 Mont. 392, 401, 185 P.3d 332, 338-39 (2008)
28   ("A challenge to a contract containing an arbitration clause on the ground of a failure of a

1  condition precedent to formation goes directly to whether the parties formed a contract and . . . the
2  matter is appropriate for the court to hear, instead of an arbitrator.").

**II. THE PARTIES DID NOT ENTER A BINDING AGREEMENT TO ARBITRATE.**

As they did in their briefing regarding the motion to expunge lis pendens, the parties dispute the proper characterization of the review and approve clause and its impact on whether a binding agreement exists. I find that under any plausible characterization of the clause, the outcome is the same: the parties did not enter a contract, and there is thus no basis for compelling arbitration.[5]

First, the review and approve clause may be characterized as a simple reflection of Kum Tat and Linen Ox's failure to reach a final agreement. Under California law, "contract formation requires mutual consent, which cannot exist unless the parties agree upon the same thing in the same sense." *Bustamante v. Intuit, Inc.*, 141 Cal. App. 4th 199, 208 (2006) (internal quotation marks omitted). "Mutual consent is determined under an objective standard applied to the outward manifestations . . . of the parties, i.e., the reasonable meaning of their words and acts, and not their unexpressed intentions or understandings." *Id.* "In other words, mutual assent exists when a reasonable person would conclude from the outward conduct of the parties that there was mutual agreement regarding their intent to be bound." *Burch v. Premier Homes, LLC*, 199 Cal. App. 4th 730, 746 (2011). If the outward manifestations of the parties do not demonstrate agreement upon the same thing in the same sense, "then there is no mutual consent to contract and no contract formation." *Weddington Prods., Inc. v. Flick*, 60 Cal. App. 4th 793, 811 (1998).

The outward manifestations of the parties in this case do not indicate mutual consent. Although Linden Ox "accepted" Kum Tat's counteroffer on May 27, 2014, that counteroffer required Kum Tat to "review and approve" Linden Ox's exclusion list for the agreement to be "fully ratified." Lam Decl., Ex. C. The reasonable meaning of this language is not that the parties

---

[5] Kum Tat contends that I have already held that the parties entered a binding contract. Mot. 4; Reply 4-5. Kum Tat is wrong. I previously held that there was no enforceable contract, regardless of whether a contract was formed. The issue of contract formation was not squarely before me. It is now. For the reasons stated below, I conclude that no contract was formed.

9

1   had reached a final agreement as to which property would be exchanged for what amount of
2   money, but that such an agreement would be reached, in the future, if Kum Tat approved Linden
3   Ox's exclusion list. This is not enough to show mutual consent under California law. *See*
4   *Bustamante*, 141 Cal. App. 4th at 213 ("There is no contract where the objective manifestations of
5   intent demonstrate that the parties chose not to bind themselves until a subsequent agreement was
6   made.") (internal modifications and quotation marks omitted); Witkin, Summary of California
7   Law, Contracts § 137 (10th ed. 2005) ("The fact that one or more terms of a proposed bargain are
8   left open or uncertain may show that a manifestation of intention is not intended to be understood
9   as an offer or as an acceptance.") (internal quotation marks omitted); *see also, Rennick v.*
10  *O.P.T.I.O.N. Care, Inc.*, 77 F.3d 309, 315 (9th Cir. 1996) ("A manifestation of willingness to enter
11  into a bargain is not an offer if the person to whom it is addressed knows or has reason to know
12  that the person making it does not intend to conclude a bargain until he has made a further
13  manifestation of assent.").

14          Second, and similarly, the review and approve clause may be characterized as an
15  agreement to agree.[6] The general rule in California is that "if an essential element of a promise is
16  reserved for the future agreement of both parties, the promise gives rise to no legal obligation until
17  such future agreement is made." *City of Los Angeles v. Superior Court of Los Angeles Cnty.*, 51
18  Cal. 2d 423, 433 (1959) (internal quotation marks omitted); *see also,* Witkin, Contracts § 147 ("A
19  contract that leaves an essential element for future agreement of the parties is usually held fatally
20  uncertain and unenforceable."). The exception to this general rule is where the agreement is
21  "definite in its essential elements" and the agreement to agree concerns only "some minor,
22  nonessential detail." Witkin, Contracts § 146. Thus, "[t]he enforceability of a contract containing
23  a promise to agree depends upon the relative importance and the severability of the matter left to
24  the future." *City of Los Angeles*, 51 Cal.2d at 433. The key inquiry is "whether the indefinite
25  promise is so essential to the bargain that inability to enforce that promise strictly according to its

---

[6] In its briefing on the motion to expunge lis pendens, Kum Tat argued the review and approve clause was properly characterized as an agreement to agree. *See* Dkt. No. 27 at 8-10. Although Kum Tat does not renew this argument in the instant motion, an agreement to agree remains a plausible characterization of the review and approve clause.

1  terms would make unfair the enforcement of the remainder of the agreement." *Id.*

2  Characterizing the review and approve clause as an agreement to agree does not help Kum

3  Tat. This is because the review and approve clause concerns an essential element of the alleged

4  agreement between Kum Tat and Linden Ox, not "some minor, nonessential detail." Witkin,

5  Contracts § 146. As I explained in the order on the motion to expunge lis pendens,

> [t]he subject matter of the review and approve clause – i.e., the items that would either be excluded from or included in the sale of the property – was central to the negotiations between Kum Tat and Linden Ox. Indeed, much of the back and forth between the parties was dedicated to the disposition of the property's immensely valuable collection of furniture, artwork, and other furnishings. Kum Tat's initial offer included all furniture, artwork, and other furnishings. Linden Ox's counteroffer included all the property's furniture but excluded a number of pieces of artwork and other items, and required Linden Ox to submit an exclusion list for Kum Tat's review and approval. Kum Tat's counteroffer likewise required the review and approval of Linden Ox's exclusion list in order to "fully ratify" the contract. Kum Tat does not explain why, if the items included in the sale constituted a nonessential element of the agreement, the parties spent so much time and energy negotiating precisely which items would and would not be included in the sale. Nor does Kum Tat explain why it felt compelled to request a $500,000 price reduction on account of a matter which Kum Tat now describes as nonessential.

Dkt. No. 143 at 10 (internal citations omitted). If the review and approve clause is characterized as an agreement to agree, the purported contract between the parties is too indefinite to be enforceable and may not serve as a basis for compelling arbitration. *See Roth v. Garcia Marquez*, 942 F.2d 617, 627-28 (9th Cir. 1991) (holding that where alleged agreement did not include all essential terms and "there were still many items to be worked out between the parties, . . . no binding contract existed").

Finally, the review and approve clause may be characterized as a condition precedent requiring Kum Tat's approval of Linden Ox's exclusion list. This characterization would not change the outcome here. Like most states, California recognizes two types of conditions precedent: conditions precedent to performance and conditions precedent to formation. *See, e.g., Jacobs v. Freeman*, 104 Cal. App. 3d 177, 189 (1980) (distinguishing between conditions precedent to performance and conditions precedent to formation); *Kadner v. Shields*, 20 Cal. App. 3d 251, 258 (1971) (same); Williston on Contracts § 38:4 (4th ed. 2014) ("[T]here may be

11

conditions to the formation of a contract or conditions to performance of the contract."). Where a condition precedent to formation is not satisfied, the proposed bargain between the parties does not become a binding contract. *See Taylor Bus Serv., Inc. v. San Diego Bd. of Educ.*, 195 Cal. App. 3d 1331, 1345 (1987) (where "condition precedent to formation of the contract" was not satisfied, "no contract was formed"); Williston on Contracts § 38:7 ("When the parties to a proposed contract have agreed that the contract is not to be effective or binding until certain conditions are performed or occur, no binding contract will arise until the conditions specified have occurred or been performed.").

Assuming the review and approve clause was a condition precedent, it was a condition precedent to formation, not to performance. "The existence of a condition precedent normally depends upon the intent of the parties as determined from the words they have employed in the contract." *Barroso v. Ocwen Loan Servicing, LLC*, 208 Cal. App. 4th 1001, 1009 (2012). The words employed in the alleged agreement here – i.e., that Kum Tat would review and approve Linden Ox's exclusion list in order to "fully ratify" the contract – indicate that the parties intended the May 27 agreement to become binding only upon Kum Tat's approval of the exclusion list. *See Roth*, 942 F.2d at 626-27 (language providing that contract "shall commence upon signature by [certain individual]" was a condition precedent to formation, and the individual's "signature was required for the contract to be binding"); *Los Angeles Rams Football Club v. Cannon*, 185 F. Supp. 717, 721 (S.D. Cal. 1960) (where contract contained provision that it "shall become valid and binding . . . only when . . . and if it shall be approved by the Commissioner," approval by the Commissioner was "essential to the formation of a contract"). That Kum Tat itself inserted the "fully ratify" language further supports this conclusion. The reasonable meaning of this outward manifestation of Kum Tat's intent is that Kum Tat did not intend to enter a final, binding contract until and unless it had approved Linden Ox's exclusion list. Because Kum Tat rejected the list instead of approving it, no contract was formed between the parties. *See Taylor*, 195 Cal. App. 3d at 1345. Linden Ox may not be compelled to arbitrate if it did not enter a binding agreement to do so.

**CONCLUSION**

For the foregoing reasons, the motion to compel arbitration is DENIED.

**IT IS SO ORDERED**.

Dated:  December 5, 2014



WILLIAM H. ORRICK
United States District Judge